**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Qwest Corp., | No. CV 08-2374-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Corporation Commission; et al., | |
| Defendants. | |

Currently pending before the Court is Plaintiff/Counter-Defendant Qwest Corporation's Motion to Dismiss Eschelon's Amended Counterclaim and Cross-claim (Doc. #57). The Court now rules on the Motion. The Court also will sua sponte grant the parties an extension of the dispositive motion deadline.[1]

**I. BACKGROUND**

The Telecommunications Act of 1996 (the "Act") requires incumbent local exchange carriers ("ILECs"), like Qwest, to negotiate and enter into interconnection agreements with competitive local exchange carriers ("CLECs"), like Eschelon. 47 U.S.C. §§251 & 252. ILECs must provide CLECs with access, at cost-based rates known as TELRIC, to network

---

[1] Given that the parties have stipulated there will be no trial in this case and given the short amount of time between the Orders on this Motion and the Motions to Object to the Record and the current dispositive motion deadline, the Court feels it is appropriate to extend the deadline to the end of January 2010.

elements that the FCC specifically finds are necessary for CLECs to meaningfully compete. Id. For network elements that the FCC finds are not subject to unbundling, and thus not necessary for CLECs, the Act authorizes ILECs to charge CLECs market-based rates under the just and reasonable standard, which are higher than TELRIC rates. Id.

Generally, Qwest provisions orders for unbundled loops according to standard provisioning intervals that, in Arizona, vary from 5 days to 9 days. But there are times when CLECs want the order to be expedited. In the past, Qwest had provided Eschelon with "emergency" expedites free of charge. Effective January 2006, however, Qwest began charging all CLECs a $200 per day fee to expedite unbundled loops, pursuant to an update in the Change Management Process ("CMP").

Eschelon initiated a complaint docket with the Arizona Corporation Commission (the "Commission") in April of 2006. Eschelon claimed, among other things, that the imposition of the $200 per day fee for expedites breached Qwest's Interconnection Agreement ("ICA") with Eschelon. The Commission adopted the findings of the ALJ and found that Qwest had breached the ICA with Eschelon. The Commission held that Qwest must provide emergency expedites free of charge to not only Eschelon, but to all CLECs.

Qwest appealed the Commission's decision to this Court. Eschelon answered and filed a Counterclaim against Qwest. Qwest filed a Motion to Dismiss the Counterclaim (Doc. #39). After responding to the Motion, Eschelon filed a Motion to Amend Answer and Counterclaim (Doc. #52). Instead of responding to that Motion, Qwest filed a Motion to Dismiss Amended Counterclaim and Cross-claim (Doc. #57), before the Court had addressed Eschelon's Motion to Amend. The Court granted the Motion to Amend Answer and Counterclaim on July 16, 2009 and instructed the Clerk to file the Lodged Amended Answer and Counterclaim, which added a Cross-claim against the Commission and Commissioners.

**II. ANALYSIS AND CONCLUSION**

Qwest has moved pursuant to Rule 12(b)(6) to dismiss both Eschelon's Amended Counterclaim against Qwest and Eschelon's Cross-claim against the Commission and individual Commission members in their official capacities. Both the Counterclaim and the

Cross-claim assert that Qwest should provide non-emergency, also known as "fee-added" or "pre-approved," expedites to Eschelon and other CLECs, at cost-based rates rather than charging a $200 per day expedite fee. The Court will address the Counterclaim and Cross-claim separately.

**A. Legal Standard**

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. At 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter[2] of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B. Counterclaim Against Qwest**

**1. Federal Causes of Action**

Qwest argues that Eschelon has not adequately stated its bases for relief in the Counterclaim. For the purposes of its Motion, Qwest presumes that Eschelon attempts to state a claim under 47 U.S.C. §252(e)(6). In its response to the Motion, Eschelon confirms that it has attempted to plead under that section. (Doc. #60, pp. 6-7.)

Neither party mentions what the Court perceives as the reason why such a claim, solely against a competitor, fails. While the Court has jurisdiction over Eschelon's federal Counterclaims pursuant to 28 U.S.C. §1331,[3] the Court finds that §252(e)(6) does not provide a private cause of action by one local exchange carrier against another local exchange carrier when the Commission is not a party to the claim.

Section 252(e)(6) provides for review of some state commission actions. That section reads, in pertinent part: "In any case in which a State commission makes a determination

---

[2]Given the procedural posture of the case and the pending Motion, the Court must construe the facts alleged in the Counterclaim and Cross-claim in the light most favorable to Eschelon.

[3]*Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 643-644 (2002).

under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 252 of this title and this section." 47 U.S.C. §252(e)(6).

Section 252(e)(6) does not provide a "private right of action to sue other private entities . . . ." *W. Radio Servs. v. Qwest Corp.*, 530 F.3d 1186, 1194 (9th Cir. 2008). Rather, section 252(e)(6) is a judicial review provision that permits actions *against a state commission* to determine whether the state commission's decision comports with the law. *Id*. (emphasis added). The section "makes no reference to suit against any private party, and describes an action for 'review' of whether the determination of the [commission] is consistent with the 'requirements' [of §251]." *Id*. It follows that a local exchange carrier cannot state a procedurally proper claim against another local exchange under §252(e)(6) when the state commission whose determination the carrier questions is not named as a defendant to the claim. The Court therefore finds that Eschelon cannot state a private claim against Qwest alone pursuant to §252(e)(6).

Although Eschelon does not seek damages in its Counterclaim against Qwest, Eschelon might conceivably state a claim against Qwest for failure to negotiate in good faith pursuant to 47 U.S.C. §207. The Ninth Circuit has left open the question whether, pursuant to §207, a local exchange carrier can sue another local exchange carrier for failure to negotiate in good faith. *Qwest,* 530 F.3d at 1203-04. Assuming for the purposes of this Order that such a cause of action does exist, the Court finds that prudential concerns mandate that Eschelon raise the issue of the proper rate to be charged for non-emergency expedites with the Commission before proceeding in this Court. *See id.* at 1200.

Policy concerns favor giving the Commission the opportunity to first decide the issue of bad faith. *Id*. at 1201. Courts often defer to and rely on agency expertise. *Id*. The Commission undoubtedly has more expertise in this area than the Court. Further, the Commission is much better situated than the Court to develop the proper record and determine the facts surrounding Qwest's bad faith. *Id*. Finally, this prudential exhaustion requirement comports with the overall statutory scheme found in sections 251 and 252. *See*

*id*. at 1202. "Requiring exhaustion generally makes good sense, because the reviewing court needs a full and adequate understanding of the reasons for an agency's decision and for its rejection of arguments that may be made by those aggrieved by the agency decision." *Fones4all Corp. v. Fed. Commc'n Comm'n*, 550 F.3d 811, 818 (9th Cir. 2008).

Eschelon argues that it did present the question of the proper rate for non-emergency expedites to the Commission during the proceedings below and that the Commission decided the issue. In its August 2007 Order, the Commission stated, "for the duration of the interconnection agreement, Eschelon Telecom of Arizona, Inc. shall pay the Qwest Corporation assessed per day charge for non-emergency expedites." (Doc. #1, Ex. A, p. 33). The Commission only added this sentence to the Order at the recommendation of the Commission Staff, not Eschelon.

To meet "exhaustion" requirements, an issue must be "meaningfully raised." *Fones4all*, 550 F.3d at 819. Eschelon cites to several places in the administrative record where it alleges it addressed cost-based pricing for non-emergency expedites. But many of these cites are confusing because of the various terms used by the parties below for the different types of expedites. And it seems clear to the Court that the main goal of Eschelon's complaint with the Commission was to resolve the issue of what – if anything – Eschelon should have to pay Qwest for emergency expedites. Any discussion of non-emergency expedites was purely peripheral. The Court therefore finds that Eschelon did not meaningfully raise the issue of the proper rate for non-emergency expedites before the Commission.[4]

For the reasons outlined above, the Court finds that Eschelon has failed to state a federal claim against Qwest.

**2. State Law Claims**

Qwest argues that Eschelon failed to articulate a state law claim in its Counterclaim.

---

[4]Further, the Commission's Order merely maintained the status quo regarding non-emergency expedites, without actually addressing whether cost-based or market rates should apply.

- 6 -

In response, Eschelon points to its jurisdictional statement in the complaint filed below with the Commission, which lists Arizona statutory sections. (Doc. #60 p. 13.) Eschelon incorporated that jurisdiction section into its Answer and Counterclaim. Eschelon seems to argue that the incorporation of the list adequately states a claim. The Court disagrees.

As stated earlier, a complaint that offers nothing more than naked assertions – including naked assertions of jurisdiction – will not suffice. Eschelon's obligation to provide grounds for relief requires "more than labels and conclusions, and a formulaic recitation . . . will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Eschelon must offer more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). The Court finds that Eschelon has done nothing, beyond merely claiming that Qwest has violated state law, to allege state law causes of action. The Court therefore will dismiss any and all state law counterclaims against Qwest.

Because the Court finds that Eschelon has failed to adequately state any causes of action against Qwest in the Counterclaim, the Court will grant Eschelon's Motion to Dismiss the Counterclaim.

**C. Cross-claim**

Eschelon has filed a Cross-claim against the Commission and the Commissioners in their official capacities. Neither the Commission nor any individual Commissioner has moved to dismiss this Cross-claim. Instead, Qwest has moved to dismiss the claim against them.

Qwest argues that because it is the party that will actually suffer if the Court grants the relief requested in the Cross-claim, Qwest meets Rule 19(a)(1)(B)'s requirements for required joinder and therefore should have standing to move to dismiss the Cross-claim. Qwest cites no legal authority for this position, nor could the Court find any.

The Court does not opine as to any arguments the Commission might have in a motion to dismiss nor as to any arguments Qwest might have for joinder or intervention. The Court simply does not believe that a non-party to a claim can move to dismiss that claim on behalf

of the actual, non-moving party to the claim. *Cf. Mantin v. Broadcast Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957)("This was error; for the moving defendants, obviously, had no standing to seek dismissal of the action as to the nonmoving defendants."). The Court therefore will deny the Motion to Dismiss the Cross-claim without addressing the merits of Qwest's arguments.

Accordingly,

**IT IS ORDERED** Granting in part and Denying in part Qwest's Motion to Dismiss Eschelon's Amended Counterclaim and Cross-claim (Doc. #57). The Court grants the request to dismiss the Counterclaim against Qwest, but denies the motion to dismiss the Cross-claim against the Commission and Commissioners.

**IT IS FURTHER ORDERED** extending the parties' dispositive motion deadline to January 29, 2010.

DATED this 23rd day of September, 2009.

James A. Teilborg
United States District Judge