**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Qwest Corp., | No. CV 08-2374-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Corporation Commission; et al., | |
| Defendants. | |

Currently pending before the Court is Defendant/Cross-Defendant Arizona Corporation Commission's Motion to Dismiss Eschelon's Cross-Claim in its Entirety (Doc. #136). The Court now rules on the Motion.

**I. BACKGROUND**

The Telecommunications Act of 1996 (the "Act") requires incumbent local exchange carriers ("ILECs"), like Qwest, to negotiate and enter into interconnection agreements with competitive local exchange carriers ("CLECs"), like Eschelon. 47 U.S.C. §§251 & 252. ILECs must provide CLECs with access, at cost-based rates known as TELRIC, to network elements that the FCC specifically finds are necessary for CLECs to meaningfully compete. *Id*. For network elements that the FCC finds are not subject to unbundling, and thus not necessary for CLECs, the Act authorizes ILECs to charge CLECs market-based rates under the just and reasonable standard, which are higher than TELRIC rates. *Id*.

Generally, Qwest provisions orders for unbundled loops according to standard provisioning intervals that, in Arizona, vary from 5 days to 9 days. But there are times when CLECs want the order to be expedited. In the past, Qwest had provided Eschelon with

"emergency" expedites for no additional charge. Effective January 2006, however, Qwest began charging all CLECs a $200 per day fee to expedite unbundled loops, pursuant to an update in the Change Management Process ("CMP").

Eschelon initiated a complaint docket with the Arizona Corporation Commission (the "Commission") in April of 2006. Eschelon claimed, among other things, that the imposition of the $200 per day fee for expedites breached Qwest's Interconnection Agreement ("ICA") with Eschelon. The Commission adopted the findings of the ALJ and found that Qwest had breached the ICA with Eschelon. The Commission held that Qwest must provide emergency expedites for no additional charge to not only Eschelon, but to all CLECs.

Qwest appealed the Commission's decision to this Court. Eschelon answered and filed a counterclaim against Qwest and a cross-claim against the Commission and the Commissioners in their official capacities. Qwest filed a Motion to Dismiss Amended Counterclaim and Cross-claim (Doc. #57) on May 11, 2009.

The Court granted in part and denied in part Qwest's motion to dismiss (Doc. #134). The Court granted Qwest's motion to dismiss the counterclaim against Qwest, but denied Qwest's motion to dismiss the cross-claim against the Commission. The Court held that Qwest could not move to dismiss the cross-claim against the Commission because Qwest is not a party to that claim. The Commission has since moved to dismiss the cross-claim (Doc. #136).

In its September 23, 2009 Order, the Court granted Qwest's motion to dismiss the 47 U.S.C. §207 counterclaim because "prudential concerns mandate that Eschelon raise the issue of the proper rate to be charged for non-emergency expedites with the Commission before proceeding in this Court." (Doc. #134, p.5.) The Court stated that policy concerns favor giving the Commission the opportunity to first decide the issue. (Id.) In general, requiring agency exhaustion "makes good sense, because the reviewing court needs a full and adequate understanding of the reasons for an agency's decision . . . ." *Fones4all Corp. v. Fed. Commc'n Comm'n*, 550 F.33d 811, 818 (9th Cir. 2008). The Court found that Eschelon

1 did not meaningfully raise the issue of the proper rate for non-emergency expedites before
2 the Commission.
3 The Commission now moves to dismiss the cross-claim based on the Court's
4 prudential exhaustion ruling in the September 23, 2009 Order.

## II. ANALYSIS AND CONCLUSION

The Commission and Eschelon have stipulated that any 47 U.S.C. §207 claims and/or state law claims against the Commission in the Cross-claim should be dismissed. Pursuant to that Stipulation, the Court will dismiss any and all state law claims and §207 claims against the Commission. (Doc. #136, Stipulation p. 2.) That leaves only the motion to dismiss the §252 cross-claim for decision.

### A. Legal Standard

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. At 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B. §252 CLAIM**

The Commission asserts that the Court must dismiss the §252 cross-claim under the law of the case doctrine, which rests on the premise that the same issue presented a second time in the same case should lead to the same result. The Commission argues that the Court already has decided that Eschelon did not meaningfully raise the issue of the proper rate for non-emergency expedites before the Commission and the Court therefore should not allow Eschelon to proceed against the Commission on this issue in the cross-claim. The Court agrees.

Eschelon's response to the Commission's motion to dismiss the cross-claim essentially amounts to a motion for reconsideration of the Court's earlier ruling, without

calling it a motion to reconsider and without attempting to meet the requirements for a motion to reconsider. Eschelon again points to all the places in the record where non-emergency expedites were specifically mentioned. Eschelon also notes that the prudential exhaustion doctrine is discretionary and that the law-of-the-case doctrine does not mean the Court absolutely cannot change its mind.

First, Eschelon did not timely file a proper motion for reconsideration. Second, even if Eschelon had filed a proper motion, the Court would not reconsider its earlier Order. The Court recognizes that the prudential exhaustion doctrine is discretionary and that §252 does not contain a statutory exhaustion requirement.[1] The Court nonetheless believes that the Commission should have the first chance, after being presented with the issue in a proper procedure, to fully analyze the proper rate for a non-emergency expedite.

After reviewing the voluminous record from the proceedings below, the Court finds that Eschelon's reason for bringing its complaint and the vast majority of its arguments and evidence related to the new fee charged by Qwest for emergency expedites. Eschelon felt it should continue to receive emergency expedites at no additional cost, and that is why Eschelon brought its action.

Regardless of whether the parties presented some amount of evidence regarding the proper rate for non-emergency expedites, Eschelon did not seek relief on that issue (and therefore did not meaningfully raise the issue), and the Commission did not have the opportunity to fully analyze the issue after presentation of evidence and argument. The Court finds that it does not have an adequate understanding of the reasons for the Commission's temporary continuation, at the recommendation of the ALJ, of the status quo regarding the

---

[1]The Court does not rely on *Fones4all v. Federal Communication Commission*, 550 F.3d 811 (9th Cir. 2008) for the proposition that administrative exhaustion is required on a §252 claim. Rather, the Court in its earlier Order cited *Fones4all* for the general justifications for administrative exhaustion and for the general standard for "meaningfully raised."

non-emergency expedite. Before deciding the issue of the proper rate for non-emergency expedites, the Commission should have the benefit of a proper complaint process and the Court should have the benefit of a fully developed Commission record.

In its prior Order in this case, the Court found that Eschelon had failed to exhaust with the Commission the issue of the proper rate for non-emergency expedites and that Eschelon should have done so under the prudential exhaustion doctrine. The law of the case doctrine generally precludes a court from reconsidering an issue previously decided in the same case. *U.S. ex rel. Eitel v. Reagan*, 35 F.Supp.2d 1151,1154 (D.Ariz. 1998)(citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)). Although the doctrine is discretionary, the Court should reconsider a previously decided issue only if there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice. *Id*. (quoting *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995)).

The parties have not indicated a change in controlling authority or that new evidence has surfaced since the Court's September 23, 2009 Order. Further, although Eschelon and even the Commission may disagree, the Court does not believe that its earlier Order was clearly erroneous and would work a manifest injustice. The Court therefore will decide the issue of the non-emergency expedite rate in this Order in conformity with its earlier Order and will grant the Commission's Motion to Dismiss.

Accordingly,

IT IS ORDERED Granting Commission's Motion to Dismiss Eschelon's Cross-Claim in its Entirety (Doc. #136).

DATED this 22nd day of March, 2010.

James A. Teilborg
United States District Judge